2025 IL App (4th) 250596-U

NO. 4-25-0596

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

FILED
September 15, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Fulton County |
| TRAVIS E. FINLEY, | ) | No. 25CF2 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Thomas B. Ewing, |
| | ) | Judge Presiding. |

JUSTICE VANCIL delivered the judgment of the court.
Justices Knecht and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, finding the trial court's determination that no condition or combination of conditions could mitigate the threat defendant posed if granted pretrial release was not against the manifest weight of the evidence.

¶ 2    Defendant, Travis E. Finley, appeals the order continuing his pretrial detention. He argues that since the initial order denying him pretrial release was entered, there has been a change in circumstances such that less restrictive conditions could mitigate the real and present threat he poses to the safety of any person, persons, or the community. He therefore argues that his continued detention is no longer necessary.

¶ 3    For the reasons that follow, we affirm.

¶ 4                          I. BACKGROUND

¶ 5    On January 3, 2025, defendant was charged by information with two counts of aggravated criminal sexual abuse (720 ILCS 5/11-1.60(d) (West 2024)). The same day, a warrant

was issued for his arrest. On January 7, 2025, defendant was taken into custody. The following day, the State filed a certified petition to deny him pretrial release under section 110-6.1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-6.1 (West 2024)), alleging that his release posed a real and present threat to the safety of the community and that no condition or combination of conditions could mitigate that threat.

¶ 6        At the hearing on the State's petition, the State proffered that Officer Joshua Wages, a police officer from Canton, Illinois, would testify that on December 28, 2024, he responded to a report from Streamwood Mental Health Facility (Streamwood). The center had received a call from defendant, and it believed he might be a danger to himself. Officer Wages went to defendant's residence and met defendant, who said he was recently hospitalized at Streamwood but had been released the day before. Defendant had called the treatment center, saying he was hearing voices and was afraid he might hurt himself.

¶ 7        Officer Wages transported defendant to a hospital for a mental health evaluation. Once there, defendant told Officer Wages that he had two sexual encounters he wanted to tell the officer about, one of which was with A.H., the 13-year-old daughter of defendant's deceased cousin, and the other of which was with T.C., another relative. Regarding the incident with T.C., defendant stated that T.C. told him she would have sex with him if he gave her money. Regarding the incident with A.H., defendant told the officer that he had been living in a shed on the property where A.H. resided and A.H. had come out to the shed to visit him. The two kissed, held hands, and had vaginal intercourse. Defendant told Officer Wages he was unsure of A.H.'s age, but he guessed she was around 17 years old.

¶ 8        The State further proffered that a second officer had spoken with A.H.'s guardian, Dolores G., who talked to A.H. to confirm defendant's statement. Dolores stated that A.H. told her

defendant asked her to bring ice and a cigarette to the shed and, once in the shed, she climbed up to the loft and observed defendant in his bed. She stated defendant reached up and pulled her head toward his penis and the two had sex. In a later interview with the children's advocacy center, A.H. repeated her account, indicating that defendant placed his penis in her mouth and her vagina. Dolores told officers that defendant lived in a shed on the residence, rather than in the residence itself, because he had prior allegations from younger family members. Dolores specifically advised that she was aware that defendant may have had sexual contact with the minor, C.H.

¶ 9 At the same hearing, the State proffered probable cause in a separate case of defendant's, concerning C.H. The State proffered that while investigating the allegations involving A.H., police discovered sexual text messages between defendant and C.H. C.H. told officers that when she was 16, defendant touched her breasts and vaginal area and attempted to have sex with her, but she refused. She stated that she had sex with defendant when she was 17.

¶ 10 Defendant then testified. He stated that he lived and worked at his cousin's shop and, if released, he anticipated being able to continue his employment there. He had two daughters, ages 17 and 3, with whom he did not have contact. He stated that he had mental health issues and had recently been hospitalized at Streamwood. However, he said that he was not diagnosed with anything while there, nor was he prescribed any psychotropic medications for schizophrenia "or anything along those lines." He instead stated he had been prescribed medicine to help him sleep. However, on cross-examination, defendant appeared to contradict himself, stating, "It was a sleep diagnosis. It's schizophrenia." Defendant testified that if he were granted release, he would submit to random drug testing, get a mental health evaluation, and follow any recommendations resulting from it.

¶ 11 The trial court also admitted defendant's pretrial report, which indicated he had

been diagnosed with schizophrenia; scored a 7 out of 14 on the Virginia Pretrial Risk Assessment Instrument-Revised, indicating he had a moderate-high risk to not appear at future appointments and reoffend; had a criminal history dating back to 2022, which included multiple charges for drug possession and theft; and had two or more prior failures to appear for court.

¶ 12　　　　The trial court granted the State's petition and denied defendant pretrial release. In its written order, the court found that the charged offense was a detainable offense, that there existed probable cause that defendant committed the offense, that defendant posed a real and present threat to the safety of a person or persons or the community, and that no condition or combination of conditions could mitigate the threat defendant posed. See 725 ILCS 5/110-6.1 (b), (e)(2), (3) (West 2024). The court explicitly stated that its findings were based on

> "the nature of the allegations and the possible punishments for the defendant, the nature of the relationship between the victims and the Defendant, the age of the victims, the sexual nature of the charges, his other pending cases, prior failures to appear in court, as well as the Defendant[']s current mental health instability."

¶ 13　　　　On April 23, 2024, defendant filed a motion for review of his pretrial detention, citing changed circumstances as a basis for granting him release. See *id.* § 110-6.1(i-5) (stating the court must determine at each subsequent appearance of the defendant if continued detention is still necessary). Specifically, defendant argued that he had found appropriate housing, was appropriately medicated, and would abide by all terms and conditions the trial court wished to impose on him. The court denied defendant's motion.

¶ 14　　　　On May 22, 2025, defendant filed a motion for relief pursuant to Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024), requesting that the trial court reconsider its denial. At a hearing on May 29, 2025, the court denied the motion for relief.

- 4 -

¶ 15     This appeal followed.

¶ 16                              II. ANALYSIS

¶ 17     Defendant did not file a memorandum on appeal so, pursuant to Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024), the arguments raised in his motion for relief will serve as his arguments on appeal. In his motion, defendant argued that his circumstances had changed by virtue of his mental health issues being addressed and securing stable housing. He argued that with his agreement to wear an ankle monitor, have no contact with the victims, and abide by any other conditions the trial court wished to impose, there were less restrictive means of mitigating the threat he posed than his continued detention. From this, we conclude that defendant does not challenge the court's finding that he poses a real and present threat to the community and only challenges the finding that less restrictive conditions could not mitigate that threat. We therefore address this argument only.

¶ 18                          A. Standard of Review

¶ 19     Where parties to a pretrial detention hearing proceed solely by proffer, our standard of review is *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 51. However, where live witness testimony is presented at a pretrial detention hearing, a trial court's ultimate finding, as well as any underlying factual findings, will not be disturbed unless against the manifest weight of the evidence. *Id.* ¶ 43.

¶ 20     Here, the State argues that because defendant testified at his initial detention hearing and at the hearing on his motion to review, we should review the trial court's findings under the manifest-weight-of-the-evidence standard. We agree. The defendant's credibility is a factual determination that the court, having heard the testimony firsthand, was in the best position to make, making the deferential manifest-weight-of-the-evidence standard of review appropriate.

See *id.* ¶ 38. A finding is against the manifest weight of the evidence where the opposite conclusion is clearly evident or the finding itself is unreasonable, arbitrary, or not based on the evidence presented. *Id.* ¶ 21.

¶ 21                                    B. Conditions of Release

¶ 22          All defendants in Illinois are presumed eligible for pretrial release. *Id.* ¶ 24. A defendant may be denied pretrial release only if he is charged with an offense eligible for detention and the State proves (1) the proof is evident or the presumption great that the defendant committed the offense; (2) the defendant poses a real and present threat to the safety of any person, persons, or the community, based on the specific articulable facts of the case; and (3) no condition or combination of conditions can mitigate the threat posed by the defendant or the defendant's risk of flight. *Id.* When determining what, if any, conditions of pretrial release will reasonably ensure the appearance of a defendant or the safety of any other person, the trial court must consider factors such as (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including his character, physical and mental condition, family ties, criminal history, employment, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the real and present threat to the safety of any person or the community. 725 ILCS 5/110-5(a) (West 2024).

¶ 23          Defendant argues that the State did not prove by clear and convincing evidence that no condition or combination of conditions could mitigate the threat he posed. We disagree and find there was ample evidence to support the trial court's finding in this regard.

¶ 24          Defendant was charged with multiple counts of aggravated criminal sexual abuse involving a minor. At the time defendant allegedly committed these offenses, he was living in a shed on his relatives' property because, according to the State's proffer, he had additional

allegations against him by other young members of his family and these allegations necessitated him living outside of the actual residence. Yet, even when removed from the proximity of his younger relatives, defendant allegedly overcame the hurdle put in place for the minors' safety and engaged in sexual acts with A.H. in the shed. The State also proffered that Dolores advised she was aware of sexual conduct that may have occurred between defendant and C.H., another minor relative. Taken together, this evidence indicates not only that defendant has a persistent pattern of engaging in this behavior but that he will continue to seek out contact with minors even when certain conditions have been put in place to curb the activity. From this, the trial court could reasonably have concluded that conditions of pretrial release, such as orders barring contact with minors and home confinement, would be ineffective in mitigating the threat defendant poses.

¶ 25      Further still, the pretrial investigation report revealed that defendant has a criminal history, including multiple pending charges for drug possession and theft and that he has failed to appear in court twice in the past. He was rated a 7 out of 14 on the Virginia Pretrial Risk Assessment Instrument-Revised, which indicated he was a moderate-high risk to not appear at future court appointments and reoffend. Considering defendant's criminal history and his disregard for the court's authority, as shown by his tendency not to appear for court, it is reasonable to conclude that even if conditions of pretrial release were imposed, he would not abide by them. The trial court's conclusion that no condition or combination of conditions could mitigate the threat defendant posed was not against the manifest weight of the evidence.

¶ 26      Defendant is correct that the trial court based its determination, in part, on his mental health struggles and, at the time of his motion for review, he appeared to be treating those issues. However, his mental health was just one factor the court considered, and it alone was not determinative. Despite the improvement in his mental health, the remaining factors on which the

court based its initial decision still existed at the time of his motion for review, and they continued to justify his detention.

¶ 27                                    III. CONCLUSION

¶ 28            For the reasons stated, we affirm the trial court's judgment.

¶ 29            Affirmed.